## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN CHRIS POHL,
TRINITY CONSTRUCTION ENTERPRISES, INC.
a New Mexico corporation, and
THE POHL FAMILY LIMITED PARTNERSHIP,
a New Mexico partnership,

       Plaintiffs,

vs.                                                              No. CV-03-1358 JB/LFG

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant St. Paul Fire & Marine Insurance Company's Motion for Summary Judgment on Plaintiffs Trinity Construction Enterprises, Inc. and the Pohl Family Limited Partnerships' Claims Against Defendant, filed December 17, 2003 (Doc. 6). The primary issue is whether, under New Mexico law, an employer is legally entitled to recovery for economic losses resulting from the injury of an employee by a third party. Because the Court finds that New Mexico law would prohibit such a recovery, the Court will grant the motion and dismiss Trinity's and the Pohl Partnership's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs seek declaratory judgment regarding their respective rights under an insurance policy that St. Paul issued. On June 21, 2001, Plaintiff John Chris Pohl was in an automobile accident with an uninsured or underinsured motorist, which caused bodily injury to Pohl. See Plaintiffs' First Amended Complaint for Declaratory Judgment ¶ 9, at 2, filed October 30, 2003 in the Second

Judicial District, County of Bernalillo, State of New Mexico and attached to the Notice of Removal, filed November 25, 2003 (Doc. 1)("Complaint").  Pohl was driving a pick-up truck, and the negligent underinsured motorist hit him from behind.

At the time of this accident, Pohl was an employee, one of two shareholders, and an executive officer of Trinity.  At the time of the collision, on June 21, 2001, Pohl was on his way to one of Trinity's construction job sites in Los Lunas to perform his duties for Trinity.  See Affidavit of John Chris Pohl ¶¶ 7,8, at 1-2 (executed January 17, 2004).  As of June 21, 2001, the Pohl Partnership had acquired commercial property in the Commercial Business Park for the purpose of developing and leasing a commercial property.  See id. ¶¶ 10, 11, at 2.

Pohl underwent three lumbar spine operations:  November 2001, May, 2002, and November 2002.  See id. ¶ 3, at 1.  As a result of injuries and multiple operations and complications, Pohl was unable to perform his duties at Trinity and the Pohls partnership (the "Business Plaintiffs").  See Pohl Affidavit ¶¶ 4, 5, 12, and 13, at 1-2.

The negligent driver had $25,000.00 of liability insurance, which was paid to Pohl with St. Paul's consent.  Also, on the date of the accident and of Pohl's loss,  St. Paul policy # KK08301393 was in effect.  See Complaint ¶ 5, at 1.  The Business Plaintiffs are named insureds under the St. Paul insurance policy.  See id.  The St. Paul policy included automobile liability, contractors' umbrella excess liability protection and uninsured/underinsured motorist coverage which is coverage for damages resulting from the negligence of underinsured motorists.  See id. ¶ 11, at 2; Insurance Policy, Table of Contents.  The Policy provides automobile liability to the Business Plaintiffs:  (i) "If you are named in the Introduction as a partnership . . .  you are a protected person for the use of a covered auto,"  Insuring Agreement at 5 of 10 (describing entities covered in policy); and (ii) "If you

-2-

are named in the Introduction as a corporation . . . you are a protected person for the use of a covered auto," id. The word "you, your, and yours" in the Policy refers to the Business Plaintiffs, the named insured. See id. Policy Introduction at 1.

The Business Plaintiffs are also insureds within the meaning of the Contractors Umbrella Excess Liability Protection, another coverage which is part of the Policy. See Contractors Umbrella Excess Liability Protection at 1-2 of 24. The Contractors Umbrella Liability Protection defines "protected person" as "[a]ny person or organization who is a protected person under your automobile Basic Insurance for the use of an auto is a protected person within the meaning of the insurance policy issued to the Business Plaintiffs. See id. at 2 of 24. On the date of the accident, Pohl was driving a vehicle that was a covered vehicle according to the terms of the policy. See Complaint ¶ 10, at 2.

The policy has arbitration provisions. The policy also states: "[St. Paul will] pay compensatory damages you and other persons protected under this agreement are legally entitled to collect from the driver of an uninsured or underinsured vehicle because of bodily injury to the protected person." Complaint ¶ 20, at 3.

Mr. Pohl, individually, has asserted a claim for underinsured motorist benefits, which is not at issue in this motion. The Business Plaintiffs have also asserted arbitration claims for St. Paul to pay, pursuant to the insurance policy issued to them by St. Paul, underinsured motorist benefits for the economic losses and compensatory damages allegedly arising out of the accident and incurred by each of those entities as a result of the bodily injury to Mr. Pohl.

St. Paul moves the Court for the entry of summary judgment declaring that the Business Plaintiffs have no valid claim for uninsured motorist benefits. The basis of this motion is that New

Mexico law, which applies in this case, does not recognize the causes of action that the Business Plaintiffs assert. St. Paul has asked the Court to dismiss the Business Plaintiffs' claims on the grounds that the legal doctrine of *per quod servitium amisit* cannot be applied, thereby precluding recovery of economic damages that the Business Plaintiffs incurred as a result of bodily injury to Pohl sustained in the automobile accident on June 21, 2001. St. Paul has not asserted that the policy language would otherwise exclude Business Plaintiffs' compensatory damage claims, if they are legally sufficient.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Rusillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir. 1991); Fed. R. Civ. P. 56(c). Once the party moving for summary judgment has made a prima facie showing of entitlement to such relief, the burden then shifts to the party opposing summary judgment to show that specific facts exist which would require a trial on the merits. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Panis v. Mission Hills Bank, 60 F.3d 1486, 1490 (10th Cir. 1995), cert. denied 516 U.S. 1160 (1996). "'The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact.'" Pueblo of Santa Ana v. Kelly, 932 F. Supp. 1284, 1288 (D.N.M. 1996)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis added by 10th Cir.), aff'd, 104 F.3d 1546 (10th Cir.), cert. denied, 522 U.S. 807 (1997).

A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for

trial, and summary judgment in favor of the moving party is proper.  See Ulissey v. Shvartsman, 61

F.3d 805, 808 (10th Cir. 1995); Smith v. Midland Brake, Inc., 138 F.3d 1304, 1307 (10th Cir. 1998).

Summary judgment is proper when the plaintiff cannot establish one or more essential elements of

its claim.

## LEGAL  ANALYSIS

Neither party has pointed to any material issues of fact.  See Business Plaintiffs' Response at

2 ("Plaintiffs do not dispute any of the facts contained in defendant's Statement of Material Facts as

they are taken from Plaintiffs' First Amended Complaint.").  Indeed, the parties agree on the facts of

the case, but disagree on the legal issue whether these facts state a claim for which the Court may

grant relief under New Mexico law.  The question is whether St. Paul is entitled to judgment as a

matter of law on the claims for economic losses by these two corporate plaintiffs resulting from the

injury of their employee by a third party.

I.     **INSUREDS ARE ENTITLED ONLY TO THOSE DAMAGES FROM THE INSURER THAT THEY WOULD LEGALLY BE ENTITLED TO RECOVER FROM THE UNINSURED TORTFEASOR.**

In New Mexico, injured persons, here the Business Plaintiffs, are entitled to recover from their

insurer, based on an uninsured / underinsured motorist policy, only those damages they would legally

be entitled to recover from the uninsured or underinsured tortfeasor.  See State Farm Auto. Ins. Co.

v. Ovitz, 117 N.M. 547, 549,  873 P.2d 979, 981 (1994); State Farm Mut. Auto. Ins. Co. v.

Maidment, 107 N.M. 568, 569, 761 P.2d 446, 447 (Ct. App.), cert. denied, 107 N.M. 413, 759 P.2d

200 (1988); § 66-5-301 NMSA (1978).  St. Paul's position is that the Business Plaintiffs are not

legally entitled to recover damages from the tortfeasor who caused injury to Pohl and, therefore, that

they are not entitled to secure compensatory damages pursuant to the insurance policy issued to them.

In <u>State Farm Mut. Auto. Ins. Co. v. Maidment</u>, an injured person asserted a claim against her uninsured motorist ("UM") carrier for punitive damages arising out of an automobile accident with an uninsured driver.  The uninsured driver later died.  Under New Mexico law, punitive damages are not available against the estate of a deceased person.  The issue before the Court was whether the insured person was nonetheless entitled to collect UM benefits to cover punitive damages she would have sought to collect from the estate of the uninsured driver.  The New Mexico Court of Appeals rejected the insured's claim that she was entitled to an award of punitive damages from her UM insurance carrier, holding that, because the defendant was not entitled to punitive damages against the deceased tortfeasor, she was not entitled to such recovery under her uninsured motorist policy. <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. Maidment</u>, 107 N.M. at 571, 761 P.2d at 449.

The Supreme Court of New Mexico further illustrated this point in <u>State Farm Auto. Ins. Co. v. Ovitz</u>.  There, the defendant was injured in a car accident, which occurred in the state of Hawaii. <u>See</u> <u>State Farm Auto. Ins. Co. v. Ovitz</u>, 117 N.M. at 548, 873 P.2d at 980.  Hawaii is a "no-fault" state. <u>See</u> <u>id.,</u> 873 P.2d at 980.  Under Hawaiian law, therefore, the insured had no cause of action against the tortfeasor. <u>See</u> <u>id.,</u> 873 P.2d at 980.  The insured then made a claim for UM benefits under his State Farm policy. <u>See</u> <u>id.,</u> 873 P.2d at 980.  The Supreme Court of New Mexico held that the insured had no valid claim against the "uninsured" driver and, therefore, had no claim under his UM policy.  <u>Id.</u> at 550, 873 P.2d at 982.

Therefore, for the Business Plaintiffs to collect UM benefits from St. Paul, they must show that they are legally entitled to recover economic damages, suffered as a result of any injury to their employee, from the driver of the underinsured vehicle.  Under New Mexico law, they cannot secure such a recovery.

-6-

**II    IN NEW MEXICO, EMPLOYERS ARE NOT LEGALLY ENTITLED TO RECOVERY FOR ALLEGED ECONOMIC LOSSES RESULTING FROM THE INJURY OF AN EMPLOYEE BY A THIRD PARTY.**

The Business Plaintiffs do not dispute that they can recover from St. Paul only those damages that they could recover from the uninsured/underinsured driver. See Transcript of Hearing at 23:9-15.[1]  Nor do they dispute that this District and the United States Court of Appeals for the Tenth Circuit have decided the issue before the Court.  Rather, the Business Plaintiffs ask the Court to reconsider those decisions in light of recent New Mexico appellate cases on lost of consortium.

**A.    THIS DISTRICT AND THE TENTH CIRCUIT HAVE ALREADY DECIDED THE QUESTION PRESENTED.**

In New Mexico, as in most jurisdictions, an employer does not have the right to recover economic losses incurred as a result of a tortious injury by a third party to its employee.  See Continental Cas. Co. v. P.D.C., Inc., 931 F.2d 1429, 1431 (10th Cir. 1991).  In Continental Cas. Co. v. P.D.C., Inc., the plaintiff/insurer filed a declaratory judgment action in the United States District Court for the District of New Mexico, seeking a judgment that it was not liable under its policy for profits lost as a result of the negligent injury to the defendant/insured's president.  The Honorable Juan G. Burciaga, Chief Judge, granted summary judgment in favor of Continental Casualty.  See id. at 1429-30.

On appeal, the United States Court of Appeals for the Tenth Circuit first looked to the language of the UM policy, which stated, in relevant part: "We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle."  Id. at 1430. The Court then adopted the reasoning of I.J. Weinrol & Son, Inc. v. Jackson, 40 Cal. 3d 327, 220

_____

[1] The Court's citations to the transcript refer to the Court Reporter's original, unedited version.  Any finalized transcript may have slightly different page and/or line numbers.

Cal. Rptr. 103, 111, 708 P.2d 682, 690 (1982), which held that allowing corporations to recover lost business profits from a tortfeasor who injured the corporation's employee would be contrary to public policy. See Continental Cas. Co. v. P.D.C., Inc., 931 F.2d at 1430. The Tenth Circuit reasoned that, to find in favor of the insured, it would have to invoke the common law principle of *per quod servitium amisit*, or "[w]hereby he lost the service [of his servant]." Id. at 1431 (citing Black's Law Dictionary at 1028 (5th ed. 1979)).

In refusing to adopt the common law principle of *per quod servitium amisit*, the Tenth Circuit affirmed the trial court's decision that "New Mexico would stand with a majority of jurisdictions who have refused [to allow employers to recover] in similar situations." Continental Cas. Co. v. P.D.C., Inc., 931 F.2d at 1431 (citing Cravens/Pocock Ins. Agency, Inc. v. John F. Beasley Constr. Co., 766 S.W.2d 309, 312 (Tex. Ct. App. 1989)(declining to apply common law rule of *per quod servitium amisit*)). See Ireland Elec. Corp. v. Georgia Highway Express, Inc., 303 S.E. 2d 497, 498-99 (Ga. Ct. App.1983)(holding that negligent injury to employee was unforeseeable and, therefore, tortfeasor has no legal duty to employer); B.V. Merrow Co. v. Stephenson, 300 N.W. 2d 734, 735-36 (Mich. Ct. App. 1980)(holding that employer did not have a cause of action for damages suffered as a result of injury of employee by third person's negligent act); Hartridge v. State Farm Mut. Auto. Ins. Co., 271 N.W. 2d 598, 601, 603 (Wis. 1978)(holding that common law right of employer to recover for loss of an injured servant's services as a result of a third party's negligence is not applicable to present day employer-employee relationship); Steale v. J&S Metals, Inc., 335 A.2d 629, 630 (Conn. Super. Ct. 1974)(holding that employer cannot recover if injury to employee is inflicted through mere negligence); Baughman Surgical Assoc., Ltd. v. Aetna Casualty & Sur. Co., 302 So. 2d 316, 317-19 (La. Ct. App. 1974)(holding that corporation cannot recover damages for losses resulting from

employer's injuries); <u>Snow v. West</u>, 440 P.2d 864, 865 (Or. 1968)(holding that employer could not recover for lost profits because of negligent injury to employee). The Business Plaintiffs, apparently conceding the disfavored status of the common law doctrine of *per quod servitium amisit*, do not ask the Court to re-consider Continental Casualty's reasoning and adopt the doctrine for New Mexico employees. <u>See</u> Business Plaintiffs' Response at 2 ("The claims by Plaintiffs Trinity and Family Partnership do not arise out of the common law doctrine of *per quod servitium amisit*.").

**B.     CONTINENTAL CAS. CO. V. P.D.C., INC. IS INDISTINGUISHABLE FROM THIS CASE AND THIS COURT IS BOUND BY THE TENTH CIRCUIT'S RULING IN THAT CASE.**

<u>Continental Cas. Co. v. P.D.C., Inc.</u> is indistinguishable from the case before the Court. Like the insured in <u>Continental Cas. Co. v. P.D.C., Inc.</u>, the Business Plaintiffs are seeking to recover UM benefits for damages for lost business profits resulting from the negligent injury of the employee/partner. The Business Plaintiffs are not legally entitled to recover those damages from the driver of the uninsured vehicle. UM benefits are therefore not available to the Business Plaintiffs. Under the reasoning and holding of <u>Continental Casualty</u>, St. Paul is entitled to summary judgment, as a matter of law.

The Business Plaintiffs have not shown, and the Court has not found, a material distinction between the facts before the Tenth Circuit and those before this Court. The damages that the Business Plaintiffs seek are identical to damages that the insureds in <u>Continental Cas. Co. v. P.D.C., Inc.</u> sought. The Business Plaintiffs allege that economic and business losses "flowed" from the injury to Pohl. In <u>Continental Cas. Co. v. P.D.C., Inc.</u>, the "[d]efendants alleged that insurance coverage for loss of profits due to negligent injury of defendant corporation's president, Donald Owens, existed under the underinsured motorist provisions of the automobile policy issued to defendant corporation

by plaintiff."  Continental Cas. Co. v. P.D.C., Inc., 931 F.2d at 1429.

The Business Plaintiffs' claims are based, in part, on the language of the insurance policy.  The policy language in the St. Paul policy and the policy before the Tenth Circuit in Continental Cas. Co. v. P.D.C., Inc. are, however, materially the same.  In Continental Cas. Co. v. P.D.C., Inc., the policy stated: "We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle.  The damages must result from bodily injury sustained by the insured, or property damage, caused by an accident. . . . "  The Business Plaintiffs allege that the use of the words "must result from bodily injury" are factually different from the St. Paul policy.  The St. Paul policy states: "We'll pay compensatory damages you and other persons protected under this agreement are entitled to collect from the owner or driver of an uninsured or underinsured vehicle because of bodily injury to the protected person . . . ."

The Court does not see a reasonable distinction between the terms "must result from bodily injury" and "because of bodily injury to the protected person."  Under both policies, the claimant must qualify as an insured, he must be legally entitled to collect damages from the tortfeasor, and the damages must result from bodily injury to an insured.  The key requirement is the second one -- whether the claimant would be legally entitled to collect damages from the tortfeasor.  Continental Cas. Co. v. P.D.C., Inc. holds that a corporation will not be able to recover economic damages resulting from the injury to an employee by a third party.  This Court is bound to follow the Tenth Circuit's direction, and Continental Cas. Co. v. P.D.C., Inc. constitutes the Tenth Circuit's statement on the question before the Court.

Continental Cas. Co. v. P.D.C., Inc. establishes that the Business Plaintiffs are not legally entitled to recover these damages from the driver of the uninsured vehicle.  It, therefore, follows that

-10-

uninsured motorist benefits under the St. Paul policy are also not available to the Business Plaintiffs. Under the reasoning and holding of the Tenth Circuit in Continental Cas. Co. v. P.D.C., Inc., St. Paul is entitled to summary judgment, as a matter of law, against the Business Plaintiffs, declaring that they have no claim for underinsured motorist coverage under this policy.

C.   **EVEN IF THE COURT WERE TO RECONSIDER THE HOLDING IN CONTINENTAL CAS. CO. V. P.D.C., INC., NEW MEXICO LAW WOULD NOT RECOGNIZE THIS CAUSE OF ACTION.**

Given the difficulty of distinguishing either the policy in Continental Cas. Co. v. P.D.C., Inc. or the Tenth Circuit's reasoning in that case, the Business Plaintiffs primarily rely upon public policy and the law of New Mexico, and on their alleged status as foreseeable plaintiffs arising out of the automobile accident of June 21, 2001. The Business Plaintiffs argue that this Court should not follow the reasoning in Continental Cas. Co. v. P.D.C., Inc. because recent New Mexico case law indicates that the New Mexico courts would not adopt the holding in Continental Cas. Co. v. P.D.C., Inc.. The Business Plaintiffs point to recent New Mexico decisions on the loss of consortium doctrine in support of this position, arguing that the state's expansion of that doctrine is based on expanded notions of duty and foreseeability. Thus, argue the Business Plaintiffs, the Court should look at the state's trend of expanding duty and foreseeability and infer that the state would further expand them to include the cause of action in this case. The Business Plaintiffs contend that the state courts would now impose a duty on negligent third parties toward the employers of an individual that the third party committed a tortious act against.

While the New Mexico courts -- and this Court interpreting New Mexico law[2] -- have

_____

[2] See Tyler v. Hurt, No. CIV-03-0186 JB/RLP, Memorandum Opinion and Order at 4-16. (D.N.M. filed November 7, 2003)(holding that the minor child of a still living parent could maintain a claim for loss of consortium under New Mexico law).

certainly expanded the doctrine of loss of consortium to encompass a wider circle of potential plaintiffs, the state has given guidance as to the limits of this expansion.  In Fitzjerrell v. City of Gallup, 2003-NMCA-125, 79 P.3d 836, the Court of Appeals of New Mexico considered whether the parents and siblings of a deceased adult child, with whom they did not live, could maintain a common law cause of action for loss of consortium.

> A very close and intimate relationship with the injured party is required to pursue an action for loss of consortium. In order to determine whether a claimant has a sufficiently close and intimate relationship with the victim, this Court should consider several factors including, but not limited to: duration of the relationship; mutual dependence; common contributions to a life together; shared experience; living in the same household; financial support and dependence; emotional reliance on each other; qualities of their day to day relationship; and the manner in which they related to each other in attending to life's mundane requirements.

Fitzjerrell v. City of Gallup, 2003-NMCA-125, ¶ 12, 79 P.3d at 840 (internal citations omitted).  New Mexico courts, therefore, are looking to the nature of the relationship that the plaintiff had with the injured individual to determine if the third party tortfeasor owes a duty to the plaintiff.

The Court does not believe that the relationship between an employee -- even if that employee is a shareholder -- and the employer corporation falls within the New Mexico courts' expansion of duty.  That is, the relationship between an employee and his employer does not give rise to a duty flowing from a third party tortfeasor, who commits a tort against the employee, to the employer. While the Business Plaintiffs argue that the small, family-owned nature of the employers in this case is similar to the intimate relationship factors described in Fitzjerrell v. City of Gallup, the Court believes that it would be inappropriate to find that a cause of action may or may not exist based on what kind of business the employer is.  That is, whether an employer can recover for economic damages flowing from an injury to its employee caused by a negligent third party should not turn on

-12-

whether the injured employee works for a large, multi-national corporation or a family-owned business.  The Court finds, therefore, that the New Mexico courts would not recognize this cause of action.

In conclusion, in New Mexico, an employer cannot recover alleged economic losses from a third party who negligently injured an employer.  Accordingly, UM benefits to reimburse such losses are not, as a matter of law, available to the Business Plaintiffs under the St. Paul policy.

## III.    THE COURT WILL NOT CERTIFY THIS ISSUE TO THE SUPREME COURT OF NEW MEXICO.

Because the New Mexico state courts have not spoken to this issue, the Business Plaintiffs suggest that it would be appropriate for the Court to certify the issue whether the Business Plaintiffs have a cause of action for economic loss caused by the negligent actions of a third party to the Supreme Court of New Mexico for direction.  In deciding state substantiative law, federal courts have the option of deciding what a state court would do, see Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), or the court can certify the question to the state appellate court for review, see, e.g., Allstate v. Stone, 116 N.M. 464, 465, 863 P.2d 1085, 1086 (1993)("This matter comes before us by way of certification from the United States District Court for the District of New Mexico[.]"); Hohulin, et.al. v. McCready, et. al.("The decision to certify a question to the state supreme court 'rests in the sound discretion of the federal court.'")(quoting Lehman Bros. v. Schein, 416 U.S. 386, 390-91 (1974)).

In Allstate v. Stone, a declaratory judgment action, the United States District Court for the District of New Mexico certified four questions regarding stacking of uninsured motorist coverages to the Supreme Court of New Mexico for decision.  Pursuant to NMSA 1978, § 39-7-3 (2003), and Rule 12-607, NMRA (2003), the Supreme Court of New Mexico may answer questions that the

-13-

federal district court certifies if the questions involve propositions of New Mexico law determinative of the cause before the certifying court and if there are no controlling precedents from New Mexico appellate courts.  See Swink v. Fingado, 115 N.M. 275, 276, 850 P.2d 978, 979 n.1 (1993).

The question whether the Business Plaintiffs have a legal cause of action for economic damages is determinative of the cause before this Court and there are no controlling New Mexico precedents on point.  There is, however, a Tenth Circuit decision on point.  In Continental Cas. Co. v. P.D.C., Inc. the Tenth Circuit has already looked to the decisions of the New Mexico courts, looked to the decisions of other states, and looked to the general weight and trend of the authority. The Tenth Circuit concluded that these damages would not be recoverable in New Mexico. Thus, this Court is not without any guidance on the issue before it, and there does not appear to be good cause for the delay that certification would necessarily entail.  While it may be permissible for this Court to certify the question to the Supreme Court of New Mexico, it is not required, and it may be more appropriate for the Tenth Circuit to certify the question if it decides to reconsider its decision in Continental Cas. Co. v. P.D.C., Inc..  This Court will follow the guidance that it has before it, and will not certify this question to the Supreme Court of New Mexico.

**IT IS ORDERED** that Defendant St. Paul Fire & Marine Insurance Company's Motion for Summary Judgment on Plaintiffs Trinity Construction Enterprises, Inc. and the Pohl Family Limited Partnerships' Claims Against Defendant is granted.  Summary judgment will be entered against Plaintiffs Trinity Construction Enterprises, Inc. and Pohl Family Limited Partnership and in favor of the Defendant St. Paul & Marine Insurance Company declaring that these two Plaintiffs have no valid rights or claims under the Defendant's Policy for their claimed damages for underinsured motorist benefits. All of Plaintiffs Trinity Construction Enterprises, Inc. and the Pohl Family Limited

Partnership's claims for damages are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Guy Dicharry
Moffat & Dicharry
Albuquerque, New Mexico

      *Attorney for the Plaintiffs*

Rudolph A. Lucero
Matthew S. Rappaport
Miller Stratvert P.A.
Albuquerque, New Mexico

      *Attorneys for the Defendant*